# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>IRVING TANNING COMPANY<br><br>Debtor. | Chapter 11<br>Case No. 10-11757 |

**MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (B) GRANTING POST-PETITION SENIOR SECURITY INTEREST TO THE MAINE RURAL DEVELOPMENT AUTHORITY, AND (C) GRANTING RELATED RELIEF**

Irving Tanning Company (the "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, by and through its attorneys, and with the consent of certain of its secured creditors, hereby moves this Court to enter an order (A) authorizing the Debtor to obtain post-petition financing from the Maine Rural Development Authority (the "MRDA") in accordance with the commitment attached hereto as **Exhibit A** (the "Commitment"); (B) authorizing the grant of a senior security interest to the MRDA in certain specific inventory (the "Collateral") identified in the new loan and security documents attached hereto as **Exhibits D- F** (collectively, the "New Loan Documents"); and (C) granting related relief in the form of order submitted herewith. The relief sought hereby is critical to the Debtor's ability to operate its business during this chapter 11 case, as the funds advanced by MRDA will permit the Debtor to purchase, in the ordinary course, the raw materials necessary for its continued manufacture of leather, which will in turn generate accounts receivable and additional availability and operating revenue. The relief sought hereby is in the best interests of the Debtor's estate, and is warranted under the applicable sections of the Bankruptcy Code, including sections 364 and 105. In further support of this motion (the "Motion"), the Debtor states as follows:

1

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

1. This Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for relief sought herein are §§ 105(a), 363, 364, 1107(a) and 1108 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002 and 4001(d) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

2. On November 16, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been sought or appointed in the Debtor's chapter 11 case, and no official committee has been appointed.

3. The Debtor is a wholly-owned subsidiary of Prime Tanning Company, Inc., a corporation organized under Delaware law ("Prime Delaware"). Prime Delaware is not a debtor in a case under the Bankruptcy Code. The Debtor is a leading manufacturer and seller of leather, primarily to customers in the handbag and footwear industries. Hides are an essential raw material to manufacture the finished product that the Debtor sells to its customers.

4. Additional background information regarding the Debtor and the relief sought by this Motion is set forth in the Affidavit of Paul Larochelle in Support of Various First Day Motions, which was filed on the Petition Date and which is incorporated by reference herein.

### A. The Debtor's Existing Secured Debt

5. Pursuant to a promissory note dated November 3, 2005 (the "2005 Note"), in the original principal amount of $500,000, the Debtor is obligated to MRDA, as of November 4,

2010, in the amount of $401,933.07. The 2005 Note is secured by the Debtor's real property located in Hartland, Maine (the "<u>Hartland Property</u>"), in relation to which MRDA holds a first position mortgage (the "<u>MRDA Mortgage</u>"). A true and correct copy of the 2005 Note is attached hereto as **Exhibit B**, and a true and correct copy of the MRDA Mortgage is attached hereto as **Exhibit C**.

6. Additionally, the Finance Authority of Maine ("<u>FAME</u>") holds a second-priority mortgage on the Hartland Property and subordinated security interests in the Debtor's personal property. As of November 4, 2010, the Debtor was obligated to FAME in the approximate amount of $828,620.

7. In late 2008 and early 2009, the Debtor, Prime Tanning Co., Inc. ("<u>Prime Maine</u>") and Prime Tanning Corp. entered into a composition with certain trade vendors (the "<u>Composition</u>"). In connection with the Composition, Prime Maine executed certain vendor notes, and the Debtor and Prime Maine granted certain mortgages and security interests to Windsor Associates, LLC ("<u>Windsor</u>") as a collateral agent for the participating vendors (the "<u>Composition Creditors</u>"). Pursuant to that certain Security Agreement ("<u>Composition Security Agreement</u>") dated March 30, 2009, Windsor holds a subordinate[1] security interest in all or substantially all of the Debtor's personal property, including the Debtor's inventory. As detailed below, Windsor's security interest, if any, in the Collateral is junior to the liens of Tasman Industries, Inc., Fund of Jupiter, LLC, Porter Capital, and FAME. The current balance of the promissory notes issued to the Composition Creditors is approximately $7.5 million.

8. Additionally, in or around November 2009, the Debtor, Prime Delaware, Prime Maine and Tasman Industries, Inc. ("<u>Tasman</u>"), currently the Debtor's sole source of hides,

---

[1] Windsor holds a subordinate security interest pursuant to the Intercreditor and Subordination Agreement dated January 22, 2010 and entered into between Windsor (as subordinating party) and Porter Capital Corporation and The Fund of Jupiter, LLC (as senior creditors).

entered into a security agreement whereby Tasman obtained a security interest in certain inventory acquired from Tasman in order to secure the obligations of the Debtor (among others). Tasman filed a UCC-1 financing statement with the Maine Secretary of State's office on November 19, 2009. In addition, Tasman provided a notice of its purchase money security interest (the "PMSI") in the foregoing inventory collateral to the other parties that had filed financing statements against the Debtor. Tasman's PMSI attaches to the Collateral.

9. In January 2010, the Debtor entered into a factoring agreement with Porter Capital Corporation ("Porter") whereby Porter agreed to factor certain receivables generated by the Debtor. To secure its obligations to Porter, the Debtor granted Porter a first priority security interest in the Debtor's accounts and a second priority security interest in the Debtor's other personal property, including inventory. As of November 12, 2010, the Debtor owed approximately $1,959,500 to Porter.

10. Around the same time (January 2010), the Debtor borrowed $2.5 million from The Fund of Jupiter, LLC ("Jupiter") and executed a promissory note in favor of Jupiter (the "First Jupiter Note"). The Debtor's obligations to Jupiter are secured by first priority security interests in all of the Debtor's personal property other than accounts, including inventory, and a second priority security interest in the Debtor's accounts. In June 2010, the Debtor borrowed an additional $500,000.00 from Jupiter and executed and delivered a second promissory note in favor of Jupiter (the "Second Jupiter Note"). As a result of certain modifications, the principal balance owed to Jupiter under the Second Jupiter Note was increased to $1.68 million. As of November 3, 2010, according to Jupiter's demand letter to the Debtor, the amount owed to Jupiter on account of the First Jupiter Note and the Second Jupiter Note was, in the aggregate, $4,358,577.83. Both the First Jupiter Note and the Second Jupiter Note are secured by the same

collateral.

### B. The New Loans

11. Immediately prepetition, with the Debtor facing a liquidity crisis that threatened to curtail the Debtor's operations, MRDA and the Debtor negotiated the Commitment. Under the Commitment, the MRDA will re-advance $100,000.00 under the 2005 Note (the "$100K Loan"). The $100K Loan would be made on the same terms and conditions as the 2005 Note, and would be secured by the MRDA Mortgage, as evidenced in the Note Modification Agreement attached hereto as **Exhibit D**. As set forth in the Note Modification Agreement, the $100K Loan would mature on November 3, 2013.

12. Additionally, MRDA agreed to lend the Debtor an additional $450,000.00 (the "$450K Loan") (and collectively with the $100K Loan, the "New Loans"), as evidenced in that certain Commercial Promissory Note attached hereto as **Exhibit E** (the "2010 Note"). Pursuant to the 2010 Note, the Debtor would make monthly minimum principal payments in the amount of $37,500.00, plus interest accrued at a fixed rate of six percent (6%) per annum, commencing December 1, 2010. The 2010 Note has a term of one (1) year.

13. As security for the 2010 Note, the Debtor proposes to grant MRDA a first priority security interest in the Collateral, being certain specified inventory listed on Schedule I of that certain Security Agreement (the "Security Agreement"), a true and correct copy of which is attached hereto as **Exhibit F**. As described above, Porter currently holds a second priority interest in all or substantially all of the Debtor's other personal property, including inventory. Additionally, Jupiter holds a first priority security interest in all of the Debtor's personal property, including inventory other than accounts factored to Porter. Tasman holds a PMSI in the Collateral. Both FAME and Windsor hold subordinated interests in the Debtor's personal

5

property, including inventory. By consent of Jupiter, Porter, Tasman and FAME, the proposed grant of a security interest to MRDA in the Collateral would prime the security interests held by Jupiter, Porter, Tasman, and FAME (collectively, the "Consenting Lenders"). Windsor has not consented, but the Debtors and the Consenting Lenders believe, and will establish by evidence, that the security interest of Windsor in the Debtor's personal property is deeply under water, of no value whatsoever, and voidable pursuant to section 506(d) of the Code. Accordingly, Windsor's alleged security interest in the Collateral is not entitled to adequate protection and may be primed pursuant to section 364(d) of the Code.

14. As evidenced by the Commitment, MRDA proposes to provide the Debtor with short-term financing in the form of the $100K Loan and the $450K Loan so that the Debtor may purchase hides from Tasman, its prepetition and sole hide supplier. Tasman is unwilling to continue supplying the Debtor with hides unless and until the Debtor secures financing, assumes the Tasman supply agreement, and provides for a prompt cure of the defaults under that agreement. However, under those circumstances, Tasman has agreed to supply hides to the Debtor on credit terms, with not less than ten loads outstanding at any one time (a value of about $800,000 to $1,000,000). Obtaining this credit from Tasman, and ensuring the supply of hides to the Debtor's operations, is essential to the Debtor's reorganization efforts. Both the $450K Loan and the $100K Loan would permit the Debtor to continue its prepetition relationship with Tasman and ensure that the Debtor can obtain the hides desperately needed to fulfill customer orders, both existing and expected.

15. The lending agreement between the Debtor and MRDA is conditioned upon, *inter alia*, the closing of the New Loans on or before 5:00 p.m. on November 30, 2010, but in reality the closing must occur immediately to insure continued operations of the Debtor. The Debtor's

agreement with Tasman for the purchase of hides is conditioned upon the Debtor obtaining the financing proposed in the Commitment Letter. Accordingly, the Debtor must immediately obtain the authority to execute the New Loans and the related documents.

## RELIEF REQUESTED

16. By this Motion, the Debtor seeks authority to execute the New Loan Documents, grant MRDA a senior security interest in the Collateral, and authorize MRDA and the Debtor to take such steps as may be necessary or appropriate to implement the foregoing. In certain respects, the proposed order submitted with this Motion varies from the requirements of D. Me. LBR 4001-2.

## BASIS FOR RELIEF

17. Section 364 of the Bankruptcy Code permits the Court to authorize post-petition borrowing by a debtor in possession and provides that the Court may authorize the grant of security interests in property of the estate in connection with such borrowing. *See* 11 U.S.C. § 364(c). Pursuant to § 364(d)(1), a debtor may incur a debt secured by a senior lien on property of the estate that is subject to a lien if more favorable financing is not available and the holder of the existing lien on the property on which the senior lien is to be granted consents or is otherwise adequately protected. *See* 11 U.S.C. § 364(d)(1). Additionally, section 105(a) authorizes the Court to issue any order that is necessary or appropriate to carry out the provisions of Title 11. *See* 11 U.S.C. § 105(a).

18. However, where junior lien creditors' liens have no value because there is no value in the common collateral beyond the prepetition debt owed to senior lien holders, the junior lien claimants are not entitled to adequate protection pursuant to 11 U.S.C.§ 364(d) "because at best they have a zero value lien." In re Levitt & Sons, LLC, 384 B.R.630, 639-40

(Bankr. S.D. Fla. 2008). "[A]s a matter of law…junior lien holders are not entitled to adequate protection because they would receive nothing under non-bankruptcy law." Id. at 642; *see also* In re Babcock & Wilcox Co., 2000 WL 533492 at *4 (E.D. La., May 3, 2000) ("Section 364(c) and (d)…do not provide for adequate protection to unsecured creditors."); In re Coastal Cable T.V., Inc., 24 B.R. 609, 612 (1ST Cir. BAP 1982) (same), *vacated on other grounds* 709 F.2d 762 (1st Cir. 1983); In re Dunckle Assoc., Inc., 19 B.R. 481, 485 n. 10 (Bankr. E.D. Pa. 1982) (Under section 364(d), "[t]he law is well settled that valueless junior secured positions or unsecured deficiency claims are not entitled to adequate protection."); In re Garland Corp., 6 B.R. 456, 462 (1st Cir. BAP 1980) ("There is no express statutory requirement that holders of unsecured claims be provided 'adequate protection.'"); *see generally* In re 620 Church Street Bldg. Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16 (1936) (no constitutional requirement of adequate protection of unsecured claims; "petitioners' [junior mortgagee] claims were appraised by the court as having 'no value.' There was no value to be protected.").

19. In addition, where the effect of the new lending is to maintain or raise the value of the debtor's assets, and where without the new loan the debtor's going concern value would be lost and the primed liens would receive nothing, adequate protection of the primed liens is provided by the value created or preserved. Levitt & Sons, 384 B.R. at 642-43 (junior lien holders who would receive nothing if property were liquidated were benefited by new lending); Bank of New England v. BWL, Inc., 121 B.R. 413, 418 (D. Me. 1990) ("If the increase in the estate's value exceeds the amount of the debt secured by the [new lender's] super-priority lien, then [primed lien holder] suffers no prejudice from Debtor's postpetition borrowing and the granting of a super-priority lien).

20. The New Loans, on the terms set forth herein and in the New Loan Documents

attached hereto, are in the best interests of the Debtor's estate. The Debtor does not currently have an alternative source of financing, and has been unable to obtain one on equal or better terms. Only a governmental or quasi-governmental financing source, seeking to preserve the almost 180 jobs at the Debtor's Hartland facility, would step in to this situation on short notice and under these circumstances. The Debtor has searched for alternatives, and none are available in time, if at all. Without the MRDA financing, the Debtor will be unable to purchase hides from Tasman, currently its only source for hides, and will thus be unable to operate its business and fulfill current and future customer orders. An immediate shutdown, a liquidation of the Debtor's assets, and the permanent loss of almost 180 jobs would likely result.

21. The Debtor seeks only to grant security interests in the Collateral, and otherwise the New Loans do not disrupt the relative priorities of secured creditors with interests in inventory that would exist outside Title 11. The interests of Porter, Jupiter, FAME, Tasman and Windsor (if any) will be adequately protected notwithstanding the New Loans, and in fact the effect of these loans will be to provide greater protection to these interests by maintaining or increasing the value of their other collateral. As noted above, the $100K Loan is secured only by the Hartland Property, on which MRDA already holds a first-priority mortgage. With respect to the $450K Loan, the Security Agreement will prime the security interests of the Lenders, but only with respect to the Collateral. The proceeds of the New Loans will in turn permit the Debtor to purchase the hides necessary for its business operations and essential for fulfilling customer orders. The borrowing proposed in this Motion will, therefore, permit the Debtor to operate as a going concern and meet its obligations as a debtor in possession, including its obligations to the Consenting Lenders. Accordingly, Porter, Jupiter, FAME and Tasman have consented to the New Loans and the relief requested herein. Windsor is undeserving of adequate

protection as the holder of a zero value lien, but, in any event, enjoys the same adequate protection received by the Consenting Lenders.

23. To the extent required, this Motion should also be considered as a motion under section 506(a), (d) and Rule 3012 of the Federal Rules of Bankruptcy Procedure to determine that Windsor's liens on the Debtor's personal property are of no value, and are entitled to no adequate protection whatsoever. *See* Levitt & Sons, 384 B.R. at 643-44 (valuation hearing under Rule 3012 and sections 506(a) and (d) may be conducted in connection with a hearing on the approval of debtor in possession financing; value is to be determined at the time the chapter 11 petition is filed).

## **NOTICE**

23. Notice of the hearing on this Motion was served on the following parties on the date on which it was filed by CM/ECF, e-mail, facsimile, or overnight mail: (1) the United States Trustee; (2) the Debtor's secured creditors, or, if applicable, to the lawyers representing such creditors; (3) the non-insider holders of the twenty largest unsecured claims against the Debtor or, if applicable, to the lawyers representing such holders; and (4) applicable federal and state taxing authorities.

WHEREFORE, the Debtor respectfully requests that this Court enter an order: (1) authorizing the Debtor to incur indebtedness to MRDA in accordance with the Commitment and the New Loan Documents; (2) authorizing the Debtor, pursuant to 11 U.S.C. §§ 105(a) and 364(d), to grant MRDA a first priority security interest in the Collateral; (3) authorizing the Debtor and MRDA to execute and deliver the New Loan Documents and to take such other steps as may be necessary or appropriate to implement the foregoing; and (4) providing such other and

further relief as is appropriate to accomplish the transactions described in the Commitment.

Dated:  November 16, 2010	IRVING TANNING COMPANY

By its proposed attorneys:


 /s/ *Robert J. Keach, Esq.*
Robert J. Keach, Esq.
Michael A. Fagone, Esq.
Máire B. Corcoran, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON
100 Middle St., PO Box 9729
Portland, Maine 04104-5029
(207) 774-1200